STATE OF NORTH DAKOTA )
                       ) SS
COUNTY OF CASS COUNTY )

I, Christopher Holte, being duly sworn, depose and state as follows:

1. I have worked as a Police Officer for the Fargo Police Department in Fargo, ND since 2013, and am a licensed Peace Officer in the State of North Dakota. I have been a Detective assigned to the Narcotics division since November of 2016. I have been assigned as Postal Inspector Task Force Officer (TFO) with the United States Postal Inspection Service (USPIS) since March of 2023 and have completed a 24-hour USPIS orientation course. I am currently assigned to a narcotics assignment, located at the Fargo, ND office of the Denver Division.  As part of my duties as a U.S. Postal Inspector TFO, I investigate the use of the U.S. Mails to illegally send and receive controlled substances and drug trafficking instrumentalities.  As part of this assignment, I received formal training from the USPIS and training through contact with experts from various law enforcement agencies.  I have received training in the enforcement of laws, and the identification of packages with characteristics indicative of criminal activity.  I have conducted and participated in criminal investigations utilizing the normal methods of investigation.

2. Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by the controlled substance traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, and to collect and launder the proceeds from the sale of controlled substances.

3. This affidavit is submitted in support of search warrants for 6683 28TH ST S in Fargo, ND 58104 (SUBJECT PREMISES) fully described in Attachment A, to seize items detailed in Attachment B (List of Items to Be Seized) which is

1

evidence of violations of Title 21, United States Code (USC), Sections 841(a)(1), 846, Title 18 USC 843(b), and Title 1956(h). Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known concerning this investigation. It would be nearly impossible to include all known factual information in this affidavit. Instead, I have provided a general overview of the investigation and set forth only the facts believed necessary to establish probable cause. Where statements of others are set forth in this affidavit, they are set forth in substance and are not verbatim. The information contained in this affidavit is based on my personal observations and experience, in addition to information obtained by other law enforcement agents, witnesses and documents.

4. As is described more fully throughout this affidavit, based on a joint agency investigation conducted by USPIS, Cass County Drug Task Force CCDTF, and other agencies, there is probable cause to believe that Tyson Leon and other individuals at or using the SUBJECT PREMISE, have and are, committing and/or conspiring to commit, controlled substance and money laundering violations. Furthermore, there is probable cause to believe that evidence, fruits, and instrumentalities of these offenses (as described in ATTACHMENT B, Items to be Seized), will be found at this SUBJECT PREMISES or located on or in the property as described in further details of ATTACHMENT A.

5. On March 11, 2025, during a routine review of USPS packages destined to North Dakota, USPIS personnel identified a suspicious Priority Mail Express package enroute from LA Quinta, CA to Fargo, ND. On March 11, 2025, the suspicious Priority Mail Express package was placed into the mail stream from LA Quinta, CA. This package displays tracking number EI54 4460 928US, weighs 1 pounds 11 ounces, and has $58.60 in US Postage affixed. The package was paid for in cash had an original scheduled delivery date of March 12, 2025. The package is addressed to "Tyler Smith 1028 Broadway DR. N APT #6 Fargo, ND 58102" and

lists a return address of "Nick Collins 6 Via Santa Elena Rancho Mirage, CA 92270."

6. Through a review of various USPS business records and other law enforcement databases, your Affiant determined the package contained several features, that in combination, are consistent with packages containing controlled substances, instrumentalities, or proceeds, sent using the U.S. Mail.

- Priority Mail Express package was mailed from California which is a known controlled substance source state.
- Priority Mail Express package was paid for with cash. Your Affiant knows that individuals who utilize the U.S. Mail to traffic-controlled substances, utilize the form of cash to pay for mailing transactions to avoid detection by law enforcement.
- Individuals involved in distributing controlled substances or proceeds through the U.S. Mail may attempt to disguise the sender or recipient of the package by listing fictitious address information, using fictitious or generic/common names, or by using incomplete addresses. Your Affiant reviewed the CLEAR law enforcement database for the sender's name resulting in the sender's name not associating with the sender address. Your Affiant reviewed the CLEAR law enforcement database for the recipient's name resulting in the recipient's name not associating with the recipient address.
- A review of USPS records for the package delivery address shows the delivery address has obtained 5 additional packages from California since November of 2024.

7. On March 12, 2025, Postal Inspector Ross Hinckley contacted your Affiant and inquired about this package. Postal Inspector Hinckley was working an interdiction detail in California. Your Affiant requested Postal Inspector Hinckley send the package directly to your Affiant at the Fargo, ND Domicile, for further investigation.

3

8. On March 15, 2025, the package arrived at the West Fargo, ND Auxiliary Sorting Facility (ASF). On March 15, 2025, your Affiant took possession of the above-mentioned packaged and visually and physically inspected the package and confirmed the above descriptions and characteristics. It should be noted, your Affiant inadvertently opened this package before a K-9 deployment. Your Affiant noted the package had a USPS Express label on the outside of the box with the CA Postal Inspectors information displayed on this label. Your Affiant believed the suspicious package was inside an additional package and decided to open the bottom of the parcel to retrieve the suspicious package. Your Affiant opened the bottom of the package and noted there was not another USPS package inside. Your Affiant only observed bubble wrap and a very small white box that was not a postal package. Your Affiant immediately closed the package and removed a white sheet on the front of the exterior package and found the original label under the new USPS Express label that was placed by the CA Postal Inspectors when they shipped the suspicious package to your Affiant. Your Affiant knowns through his experiences that when an out of district Postal Inspector sends your Affiant a package directly the suspicious package is usually placed inside a larger package and sent to your Affiant. In this event a piece of paper was tapped over the original Express label and a new label was placed over the original Express Label.

9. On March 15, 2025, the package was presented to a K-9 sniff at the Downtown Fargo Post Office. Fargo Police K-9 Detective Bret Witte and his certified narcotics detection dog "Kilo" examined the area where several packages were placed. Detective Witte was unaware of the description or characteristic of the package, did not witness the preparation of the package lineup, or know the specific location of where the package was placed. The package was placed among five other packages of various sizes. Detective Witte indicated "Kilo" positively alerted to the presence of the odor of controlled substances emanating from this package.

10. On March 17, 2025, your Affiant applied for and received federal search warrant

3:25-mj-181, authorized by the Honorable U.S. Magistrate Judge Alice Senechal in the District of North Dakota to search the Priority Express Mail package tracking number EI 544 460 928 US. On the same date, USPIS TFO Kyle Hinrichs and your Affiant executed the search warrant on the package. The package was found to contain bubble wrap and a small white box. Inside the white box there was a plastic bag that contained 254 gross grams of a white powder. Your Affiant field tested the white powder, and the test showed a positive result for cocaine.

11. On March 18, 2025, Det. Witte conducted physical surveillance at Subject Premise. Det. Witte observed a vehicle parked in the designated parking lot at the Subject Premise with MN license plate JPE896. This vehicle was a 2008 Lexus registered to Barbara Paintner at the Subject Premise. Det. Witte ran MN JPE896 in Fargo Police Law Enforcement database and found on March 14, 2025, there was a call for service at 228 Broadway where officers had contact with Tyson Leon and Breanna Williams. Furthermore, on June 30, 2024, Det. Witte found a traffic stop at the 700 BLK of Broadway in Fargo with MN JPE896 and Fargo Police Officer issued citations to the driver of this vehicle Tyson Leon.

12. On the same date, Det. Witte entered 1028 Broadway apartment complex. It should be noted the door to this apartment complex was unsecured and had a common entrance that was open to general foot traffic in the hallways. Det. Witte proceeded to the second floor where he found apartment 5 and 6. Det. Witte placed his nose up to the door seam of apartment number 6 and Det. Witte could smell a strong odor of marijuana emitting from apartment number 6. Det. Witte examined the mailboxes in the common entry of this apartment complex. Det. Witte found apartment #6 listed the names Leon/Smith on the outside of the mailbox.

13. On March 18, 2025, your Affiant reviewed USPS records and found that there was multiple electronic inquires and tracking of the previous similar suspicious packages and the current package with tracking number EI 544 460 928 US. Your Affiant knows that individuals that electronically track packages commonly use

5

computers, tables, cell phones and other electronic devices to electronically track their packages. USPS allows customers the location/status of packages by either using an electronic device connected to the internet, or by contacting a 1-800 phone number from a telephone. Customers that use electronic devices such as cellular phones, tablets, or laptops, can either navigate to the USPS website or use a installed USPS application. Customers then enter the tracking number for the package. A review of USPS records and databases show that an unknown person(s), using an electronic device, has made several online inquires to track the status/location of the seized Priority Express Mail package.

14. Your Affiant reviewed USPS records and databases and learned that as recently as January 1, 2025, USPS packages were delivered to the SUBJECT PREMISES in the names of Tyson Leon and as recently as March 16, 2025, mail was delivered to the SUBJECT PREMISES in the name of Sydney Smith.

15. Det. Witte ran both Tyson Leon and Sydney Smith in Fargo Police records and found both listed the SUBJECT PREMISES as their residence in Fargo Police records.

16. Your Affiant conducted a criminal history check on both Tyson Leon and Sydney Smith. Your Affiant learned there was no criminal history for Sydney Smith. Furthermore, a review of criminal history for Tyson Leon showed an arrest out of Iowa from November 2016 for possession of drug paraphernalia.

17. On March 18, 2025, your Affiant applied for and received federal search warrant 3:25-mj-183, authorized by the Honorable U.S. Magistrate Judge Alice Senechal in the District of North Dakota to search 1028 Broadway Dr. N Apt #6 in Fargo, ND.

18. On March 19, 2025, agents from the Cass County Drug Task Force (CCDTF) and United States Postal Inspection Service (USPIS) Task Force conducted a controlled delivery of the seized parcel at the Broadway address. USPIS Task Force Officer Justin Phillips (TFO Phillips) delivered the seized parcel while in an

undercover capacity dressed as a USPS letter carrier. TFO Phillips reported Tyson Leon answered the door and took delivery of this package.

19. Agents monitored an alarm system installed in the seized parcel and noted the alarm system did not indicate the package was opened after Tyson Leon accepted it from TFO Phillips. Agents executed the federal search warrant at 1028 Broadway Dr. N Apt #6 in Fargo, ND.

20. During the execution of the search warrant a 1028 Broadway Dr. N Apt #6 in Fargo, ND agents detained Tyson Leon and Sydney Smith inside the residence. Your Affiant informed both individuals of their Miranda Rights and stated they understood and said they wanted to cooperate.

21. During a post Miranda interview with Tyson Leon, Tyson said he was accepting packages for Jose Zendejas aka "Z". Tyson Leon said he did not know what was inside the packages and said he has received approximately 2 packages in the past for Jose Zendejas. During this interview Tyson Leon received a phone call from the contact name "Z" with phone number 701-552-3407. Tyson Leon said this individual was one Zendejas. During this investigation Tyson Leon said he wanted to cooperate with agents and agreed to notify Jose Zendejas that the package was delivered to his house. Tyson Leon conducted multiple recorded phone calls and text messages with Jose Zendejas arranging the pickup of the seized parcel that was delivered to Tyson Leon.

22. Your Affiant had Sergeant Aldin Golos (Sgt. Golos) from the Metro Area Street Crimes Unit conduct physical surveillance at Jose Zendejas's address located 6683 28TH ST S in Fargo, ND (SUBJECT PREMISES). Sgt. Golos observed a male, later identified as Jose Zendejas, leaving from the SUBJECT PREMISES and was followed away from this location in a white SUV with ND plates 386AUU (Registered Owner David Sheppard). It should be noted Sgt. Golos did not conduct constant surveillance from the SUBJECT PREMISES to the Broadway address.

23. After approximately 15 minutes, Tyson Leon received a phone call from Jose Zendejas requesting Tyson Leon to bring the package out to his vehicle. Agents observed Jose Zendejas parked in the back parking lot of Tyson Leon's apartment complex in the same white SUV with ND plates 386AUU. Tyson Leon requested Jose Zendejas come inside to pick up the package. Jose Zendejas was observed exiting from his vehicle and going into Tyson Leon's apartment building. Jose Zendejas knocked on the door of Tyson Leon's apartment and agents from inside this apartment detained Jose Zendejas. During this investigation agents smelled an odor of marijuana emitting from inside Jose Zendejas's vehicle. A search of Jose Zendejas's vehicle resulted in 3 small bags of suspected cocaine being seized. Jose Zendejas was arrested for possession of cocaine with intent to deliver and transported to the Cass County Jail. Jose Zendejas declined to speak with agents during this investigation. During the booking process deputies found a small baggie of suspected cocaine in Jose Zendejas's bag that he had on his person when detained. It should be noted your Affiant reviewed Jose Zendejas's North Dakota drivers license and found he had a listed address of 6683 28TH ST S (SUBJECT PREMISES) in Fargo, ND. This was the same address that Sgt. Golos observed Jose Zendejas leave from.

24. Your Affiant spoke with USPIS TFO Kyle Hinrichs (TFO Hinrichs) and learned on October 28, 2024, during routine interdiction TFO Hinrichs seized two parcels destined for 6683 28TH ST S (SUBJECT PREMISES) that contained a large quantity of marijuana and hydrocodone pills. This package was searched pursuant to federal search warrant (3:24-mj-682)

25. On March 18, 2025, agents subpoenaed multiple Midco internet provider IP addresses tracking the seized parcel that contained 254 grams of cocaine destined to the Broadway address. On March 19, 2025, Midco internet provided disclosed the IP addresses subpoenaed by agents were registered to Jose Zendejas at 6683

28TH ST S in Fargo, ND (SUBJECT PREMISES).

26. On March 19, 2025, your Affiant spoke with CCDTF TFO Bret Witte (TFO Witte) who had a current investigation into Jose Zendejas for narcotics related offenses. TFO Witte provide your Affiant with the following information:

"In June 2024, Det. Witte was contacted by Moorhead Police Detective Eric Zimmel regarding an individual nicknamed "RJ" selling cocaine. Detective Zimmel subsequently identified the individual as Jose Enrique Zendejas aka Rene Zendejas. Detective Zimmel also determined Zendejas current address to be 6683 28 St S in Fargo, North Dakota. Detective Zimmel asked your Declarant to assist with the investigation into Zendejas. Det. Witte is familiar with Zendejas based on his involvement in a large-scale federal methamphetamine trafficking case from the early 2000's nicknamed "Operation Speedracer". Detective Zimmel subsequently sent Det. Witte the following email detailing the information regarding Zendejas' drug trafficking":

"On 06/01/2024, Moorhead Police Department Narcotics Detective Eric ZIMMEL was contacted by an anonymous Concerned Citizen (CC). This CC provided information to Detective ZIMMEL in regard to individuals selling controlled substances in the Fargo/Moorhead area. The CC is currently not receiving any compensation for providing this information. The CC does not have an agreement to fulfill any obligations with law enforcement. The information provided by the CC was shown to be credible and reliable, reference below".

"On this date, the CC advised Detective Zimmel the CC identified an individual involved in distributing cocaine in the Fargo/Moorhead area. The CC identified this individual as "RJ". The CC described "RJ" as a late middle-aged Hispanic race adult male, originally from California. The CC described "RJ" to have a tattoo of the number "13" on his abdomen. The CC described "RJ' to be residing with a girlfriend. The CC described "RJ's" girlfriend as an early middle-aged Caucasian race adult female with brown in color hair. The CC reported 'RJ' owns two different style vehicles. The CC described

9

"RJ's" vehicle as a silver in color smaller Audi passenger style vehicle and a red in color single cab Ford or Dodge pick-up style vehicle".

"The CC had first learned of "RJ" through common associates. The CC knows "RJ" is distributing cocaine to the CC's associates. The CC's associates have recently purchased ounce quantities of cocaine from "RJ". The CC's associates described "RJ" will store his cocaine inside a "Pringles" potato chip packaging tube or inside a "Ajax" cleaning product canister. The CC's associates meet with "RJ" at "RJ's" residence in Fargo, ND. An associate of the CC provided the CC with "RJ's" address and contact information. The CC identified 'RJ's" address as 6683 28th Street South in Fargo, ND and "RJ's" phone number (701) 612-1767".

"On 06/04/2024, Detective ZIMMEL reviewed the information provided by the CC. Detective ZIMMEL utilized Moorhead Police database, finding 6683 28th Street South in Fargo, ND to be associated with Jose Enrique ZENDEJAS, DOB: 06/20/1974. ZENDEJAS has this above-mentioned address listed on his North Dakota driver's license. ZENDEJAS was found to be a (49) year old Hispanic race adult male. Detective ZIMMEL also found ZENDEJAS previously held a California driver's license. Detective ZIMMEL found ZENDEJAS to have recent contacts with Addie Mae FULLERTON, DOB: 10/02/1987. FULLERTON was found to be a (36) year old Caucasian race adult female with brown in color hair".

"Most recently; on 06/02/2024, Moorhead Police Department conducted a traffic stop on a silver in color 2010 Audi TT (Vin # TRUFFAFK9A1023267) smaller passenger style vehicle. This vehicle was found to be operated by FULLERTON. FULLERTON was found to have a revoked North Dakota driver's license. Due to FULLERTON's driving status, FULLERTON contacted who she identified as her fiancé to respond to the traffic stop location. ZENDEJAS later arrived at the traffic stop location and took custody of the above-mentioned vehicle. Reference Moorhead Police Department ICR# 24013770".

"In addition; on 05/04/2024, Fargo (ND) Police Department conducted a field contact on

10

a red in color pick-up style vehicle with no attached state issued license plates. This vehicle was found to be operated by ZENDEJAS. The patrol officer who made contact with ZENDEJAS did not include the vehicle identification number to the call for service. Due to the nature of the call for service, ZENDEJAS was released on scene. Reference Fargo (ND) Police Department ICR# 24029300.

"Detective ZIMMEL utilized his undercover social media account, locating ZENDEJAS open source Facebook account. Detective ZIMMEL found Facebook account https://www.facebook.com/profile.php?id=100081649145512 listed for "Jose E Zendejas" who resides in Fargo, ND and confirmed this accounts photos to be consistent with ZENDEJAS physical features. Detective ZIMMEL found ZENDEJAS uploaded a photo on 11/15/2022, where he appears to be standing inside of a residence. In this photo, ZENDEJAS is shirtless, where Detective ZIMMEL was able to identify a large distinctive tattoo of the number "13" on ZENDEJAS abdomen."

27. Based on this information, Det. Witte opened a narcotics investigation into Jose Zendejas and 6683 28 St S in Fargo (SUBJECT PREMISES). During Jose Zendejas's arrest today (March 19, 2025) agents found he was in possession of two hidden containers similar to the containers described by Detective Zimmel in the above-mentioned outline. Your Affiant notes the above information outlined by Detective Zimmel appears to be related to Jose Zendejas SR. born in 1974. Agents learned this is Jose Zendejas Jr's father. Furthermore agents learned that Jose Zendejas Sr is currently in custody.

28. On March 19, 2025, TFO Hinrichs ran USPS business records and found that Jose Zendejas has received mail in his name as recent as March 18, 2025, at 6683 28TH ST S (SUBJECT PREMISES).

**SEIZURE OF EQUIPMENT AND DATA**

1. The aforementioned facts demonstrate probable cause to believe that the location(s) listed in Attachment A, has been and is being used to commit federal criminal offenses, and that the items in the attached list of Items to Be Seized, constituting evidence of those violations will be located there. Based on my experience and information that I have obtained from others experienced in such investigations this evidence will include various pieces of computer hardware, computer software, computer storage media, and computer records.

2. The computer is an instrumentality of the crime because it is "used as a means of committing [the] criminal offense" according to Federal Rule of Criminal Procedure 41(c)(3). The computers are also likely to be a storage device for evidence of crime because individuals involved in such crimes, intentionally or inadvertently maintain records and evidence relating to their crimes on their computers. As such, the evidence obtained during the requested search may provide vital details regarding the files accessed from the computers.

3. I also know that during the search of the premises it is rarely possible to complete on-site examination of computer equipment and storage devices for a number of reasons, including the following:

4. Searching computer systems is a highly technical process which requires specific expertise and specialized equipment. There are many types of computer hardware and software in use today that it is rarely possible to bring to the search site all of the necessary technical manuals and specialized equipment necessary to conduct a thorough search. In addition, it may also be necessary to consult with computer personnel who have specific expertise in the type of computer, software application, or operating system that is being searched.

5. The best practices for analysis of computer systems and storage media rely on rigorous procedures designed to maintain the integrity of the evidence and to

12

recover hidden, mislabeled, deceptively-named, erased, compressed, encrypted, or password-protected data while reducing the likelihood of inadvertent or intentional loss or modification of data. A controlled environment, such as a law enforcement laboratory, is typically required to conduct such an analysis properly.

6. The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impractical to search for data during the execution of the physical search of the premises. The hard drives commonly included in desktop computers are capable of storing millions of pages of text.

7. The ability to encrypt data also can complicate the mere mirroring of hard drives on site, since recreating the data may require the exact same hardware setup to function properly. It is, therefore, often necessary to re-connect all the original hardware and software in a controlled computer laboratory setting in order to retrieve the relevant evidence and data accurately.

8. Due to the volume of data at issue and the technical requirements set forth above, it may be necessary that the above-referenced equipment, software, data, and related instructions be seized and subsequently processed by a qualified computer specialist in a laboratory setting. Under the appropriate circumstances, some types of computer equipment can be more readily analyzed and pertinent data seized on-site, thus eliminating the need for its removal from the premises. One factor used in determining whether to analyze a computer on-site or to remove it from the premises is whether the computer constitutes an instrumentality of an offense and is thus subject to immediate seizure as such or whether it serves as a mere repository for evidence of a criminal offense. Another determining factor is whether, as a repository for evidence, a particular device can be more readily, quickly, and thus less intrusively, analyzed off-site, with due considerations given to preserving the integrity of the evidence. This, in turn, is often dependent upon the amount of data and number of discrete files or file areas that must be analyzed, and this is frequently dependent upon the particular type of computer hardware

involved. As a result, it is ordinarily impossible to appropriately analyze such material without removing it from the location where it is seized.

9.  Based upon my knowledge, training, and experience, as well as information related to me by agents and others involved in forensic examination of computers, I am aware that searches and seizures of evidence from computers taken from the premises commonly require agents to seize most or all of a computer system's input/output and peripheral devices. This is done so that qualified computer experts can accurately retrieve the system's data in a laboratory or other controlled environment. Therefore, in those instances where computers are removed from the premises, in order to fully retrieve data from a computer system, investigators must seize all the storage devices, as well as the central processing units, and applicable keyboards and monitors which are an integral part of the processing unit. If, after inspecting the input/output devices, system software, and pertinent computer-related documentation, it becomes apparent that these items are no longer necessary to retrieve and preserve the data evidence, and are not otherwise sizeable, such materials and/or equipment will be returned within a reasonable time.

10. The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but shall not be limited to, surveying various file directories and the individual files that they contain(analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence authorized for seizure by the warrant); examining all the structured, unstructured, deleted, and overwritten data on a particular piece of media; opening or reading the first few pages of such files in order to determine their precise contents; scanning storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and performing electronic key-word searches through all electronic storage areas to

determine whether occurrences of such language contained in the storage areas are intimately related to the subject matter of the investigation.

11. Based on my knowledge, training and experience, and the experience of other law enforcement personnel, I know that individuals engaged in these types of crimes, oftentimes keep records of their criminal activities including, but not limited to, emails addresses and passwords, internet account information and passwords, names and contact information of co-conspirators, records and receipts of financial transactions, records and calendars of dates when they may have participated in criminal activities. In addition, I know that persons engaged in criminal activity, keep such legally obtain items in their residences, and may keep these items on some sort of electronic media, such as computer hard drives or other forms of electronic storage.

12. Based on my knowledge, training and experience, and the experience of other law enforcement personnel, I know that individuals who use the internet and/or computer systems to conduct criminal activities many times keep records of their activities including but not limited to co-conspirator names, emails with other co-conspirators, website addresses, addresses and contact points of co-conspirators, and financial account numbers and transaction information of criminally derived proceeds. These individuals may also keep this evidence on various forms of electronic storage media, including computer hard drives, CDs, DVDs, flash memory or thumb drives, floppy disks, and other forms of computer storage media. Since computer storage media can now securely hold large amounts of data in a very small space, these individuals tend to keep this information for long periods of time. Further, simply deleting these items from computer storage media does not necessarily destroy the data, and in many cases, deleted data can be recovered using various forensic tools.

13. Based upon my training, education, and experience in conducting narcotics investigations, your Affiant is aware that persons who traffic in controlled substances generally keep records, notes, receipts, ledgers, logs of buyers and

sellers, transaction amounts, and other similar documentation of their drug trafficking activity. Drug traffickers also frequently possess various drug paraphernalia to aid in their drug trafficking activities, such as scales to weigh out quantities of controlled substances, or smoking devices and hypodermic needles and syringes to ingest controlled substances.

14. Based upon my training and experience in conducting narcotics investigation, your Affiant is aware that persons who traffic in controlled substance form an apartment complex will regularly store controlled substance, US currency from drug proceeds, paraphernalia, and other items of contraband in garages, storage units and vehicles on site at the SUBJECT PREMISES being searched.

15. Based upon my training, education, and experience in conducting narcotics investigations, your Affiant is also aware persons who traffic in controlled substances utilize cellular phones and other electronic devices to engage in drug trafficking activity, including through text messaging, social media, and phone calls. I am aware that cellular telephones and other electronic devices have various features that save information, data, and images on the device that are later accessible to the user. That information includes, but is not limited to, calls made, calls received, missed calls, text messages sent and received, contact lists, and photographic and video images. Some of this information can be maintained on media storage devices that may be inserted into the cellular phone or device. Further, Your Affiant has participated in numerous investigations related to the distribution of opiate pills containing oxycodone and fentanyl, and other controlled substances, wherein cellular phones have been utilized by these drug traffickers. During searches of cellular telephones seized from those individuals, the phones almost always have conversations in text messages and other messaging applications, such as "Facebook Messenger" and "WhatsApp," where users of the phone are arranging drug deals, and communicating with drug purchasers or sources of supply. Your Affiant has also observed numerous photos on such cellular phones where drug traffickers take photos and/or videos of themselves

with large amounts of US Currency, of their drug products, and of firearms. Often times, these drug traffickers will send photos of their products to the people purchasing them. They will also often times request those who are laundering drug proceeds to send images of money wire transactions or receipts, or deposit record in financial institutions. Further, in most controlled purchase of drugs by law enforcement agents using confidential informants in recent years, cellular phones have been utilized to arrange meeting locations and meeting times, and to discuss drug weights, quantities, and/or prices

16. Based on the above information, I submit that probable cause exists to believe that evidence, fruits and/or instrumentalities of crime are present at the SUBJECT PREMISES. I therefore requests that a search and seizure warrant be issued authorizing your affiant and other law enforcement to search the listed locations, for the items listed in the attached list of Items to Be Seized.

16  I therefore, seek the issuance of a warrant to search SUBJECT PREMISES for the items related to violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846; and Title 18, Section 843(b), Illegal Use of a Communication Facility.

Respectfully submitted,

*Christopher Holte*
Christopher M. Holte
U.S. Postal Inspector TFO


*Alice R Senechal*
SWORN AND SUBSCRIBED TO ~~BY TELPHONE~~
THIS 20th DAY OF March 2025.
ALICE SENECHAL, UNITED STATES MAGISTRATE JUDGE